Good morning, Your Honors. May it please the Court, I do represent the appellant in our case, Margaret Afton Johnson, who is the appellant in the case of Johnson v. United States. And our case has been set this morning on the docket with two cases, Wisnan v. United States and Autery v. United States. In all three of these cases, appellants lost at the U.S. District Court on a motion to dismiss or for summary judgment, based on one or more of the exceptions to the Federal Tort Claim Act's waiver of immunity. In our case, in the Johnson case, the exception involved was the independent contractor exception. In Wisnan, the exception was the discretionary function exception. And in Autery, both the independent contractor and discretionary function exceptions were involved. I believe, Your Honors, that the common thread running through our three cases is the allocation of the burden of proof under the case, under this Court's case, 1992 case of Prescott v. United States. And I'm certain that counsel for Wisnan and Autery will argue, as we are, that if the U.S. District Court judge had considered the facts in the light most favorable to the appellant, that the motion to dismiss and or for summary judgment would properly have been denied. And our case, as I indicate, was based on the independent contractor exception. As we detailed in our brief, there was ample evidence of the fact that the employee involved, the woman we say was the employee, Ms. Hill, was in fact an employee, based on the Court's standards of the right to control and the actual exercise of that right to control. Her activities as the cleaning person for the post office in Red Lodge were specifically set out in her written contract, not only the goals of her duties as a cleaning person, but also the specific way she was to clean. And we detailed all this in our brief. I'm not going to repeat everything, but even to the point of how she was to use a wet mop and how she was to do the cleaning and how she was supposed to walk backward as she did figure eight motions. Did the record show that she had any other clients? No. I think the record shows this was her only client, yes. Her only one. She only worked at the U.S. Post Office. She never worked outside of the U.S. Post Office building in Red Lodge, Montana. That was her sole work. Now, she didn't have any other boss either, did she? She wasn't. No. No. Her only boss was the postmaster, and she also indicated other employees would tell her what to do or where her work needed to be done. But the postmaster was basically her boss. Her government contract did not require her to have insurance? In terms of liability insurance? You know, her contract is in evidence. It's not clear to me as to whether or not her contract required her to have insurance. I don't believe she had. I know she had no insurance. In fact, she had no insurance. And, in fact, she testified in her deposition, which is part of the record, that, in fact, she believed that if she was injured on the job, which is not part of this case, but she said that if she was injured on the job, she believed that she would be covered by workers' compensation insurance by the government. So she thought, in that sense, she was an employee. Also, as she renewed her arrangement with the post office, as she called it, she would ask for a raise, and she would get an hourly raise. They would raise her hourly rate from one rate to another. And although her written contract said she would be paid a fixed sum every two weeks, in fact, she submitted hours, and she was paid, based on the number of hours, times a certain hourly rate. So she was paid on an hourly rate. Furthermore, as the record shows, all of her tools of her job, all of the materials that she used in her job, all of these were supplied by the government. She did not bring any equipment, cleaning supplies, anything at all. It was all totally supplied by the government. Also, all of her work was done during the regular business hours of the post office when people were there to supervise her. It wasn't done in any type of after-hours performance. So we believe that under the Prescott standard, at a minimum, even though we think the evidence was overwhelming, as she was, in fact, an employee, at a minimum, there was certainly a dispute of material fact. And if the court had applied, the U.S. District Court judge had applied that standard, the court could not have granted the motion for dismissal or for summary judgment. Let me talk to you a bit about this procedure and standard of proof. My understanding is where there isn't a mixture of the facts so much with the jurisdictional issue, that the judge is supposed to look at the jurisdictional facts and decide it. And that would require sometimes some balancing and not necessarily looking at the summary judgment standard. So if this is a case, I suspect, where the judge should have looked at these facts, decided the jurisdictional issue, and not looked to necessarily interpreting them all in the non-moving party's favor. Is that right? I think Your Honor is correct that that's the general law. But I think if we look at the Prescott case, the court in that case said that when you're dealing with an exception to the Federal Tort Claims Act, when you're looking at one of those exceptions, in fact, it is a mixed question of jurisdiction and the merits. And when you have that mixture, that intermixture, that's when it becomes more like the summary judgment, or it does become the summary judgment standard, where you have to give the benefit of the doubt to the claimant. Well, the merits issue in this case would be whether the floor was wet and whether your client slipped on it. Correct. And that's completely separate. That would be separate. But I think what the court in Prescott was saying, now, in Prescott it was dealing with the discretionary function exception, not the independent contractor exception. But Prescott talked in terms of any exception to the Federal Tort Claims Act. But that is an affirmative defense to the Federal Tort Claims. And the court in Prescott did, back in 1992, did say that that was part and parcel of the underlying merits. I don't think your client is hurt by the fact that we ought to have the judge just look at the facts, balance and decide. It seems to me it's pretty clear what's going on here. But I'll look again at Prescott, but I'm not sure that I agree. Yeah. And in another case this Court had, in the Miller case, which is cited, I think, in one of the other counsel's briefs, which came after Prescott, that case the court did the same thing. And I think it's consistent. The cases that we've looked at that talk about the standard where the court doesn't have to do this, giving the benefit of the doubt, are cases where it's completely different. There was one case where there was a question of statute of limitations, which involved something totally outside of the merits of the case. In this case, we do believe that it is interrelated, intermixed. And I would reserve whatever small time I have to provide. All right. We'll give you two minutes on Roboto. Thank you, Your Honor. Okay. Mr. Smith, please proceed when you're ready. Thank you, Your Honor. If it pleases the Court, my name is Mark Smith. I'm an assistant U.S. attorney, and I represent the United States Postal Service in this matter. We would respectfully request that the Court affirm dismissal on this case. It's an appropriate and a completely appropriate result. Plaintiff's entire theory, as articulated for the first time in the reply brief, is that the district court applied the incorrect standard of review. Plaintiff argues that the jurisdictional determination was so intertwined with the merits that the district court should have applied the standard for summary  Plaintiff, however, conveniently fails to articulate exactly how these issues are inextricably intertwined. The jurisdictional issue and the substantive claims, as Judge Fletcher pointed out, are not intertwined in this case. And they're certainly not so intertwined that resolution of the jurisdictional question is dependent upon a factual issue going to the merits. The contrary here, the two issues are separate. A final determination on the merits, i.e. negligence, is in no way dependent upon whether Ms. Hill, who was the janitor, was or was not a United States Postal Service employee. The merits in this issue and in this negligence claim are whether the floor was wet and whether there was a warning sign that was visible to the plaintiff when she walked into the Red Lodge Post Office. The entire notion that I think plaintiffs are trying to advance here is that whenever you have an independent contractor exception to the Federal Tort Claims Act at issue, you've got an intermingled question of jurisdiction and merits. And I think in order to disprove that assertion, all you have to do is look for a case where a plaintiff's complaint was dismissed on the basis of the independent contractor exception to the Federal Tort Claims Act and see if they use the summary judgment standard. Well, let's look to the facts of this case. Okay. I don't disagree with what you're saying up to this point, but I think where your problem is is with the facts here. Okay. Well, if I could, Your Honor, I'd like first and foremost to address something that the plaintiff's counsel stated that was incorrect. In fact, Ms. Hill worked as a contract custodian for three other businesses in the Red Lodge area. And that is noted in my brief on page 7 and in the excerpts of record at page 64. But my question was, did she have a boss other than the United States for this job? For this job, she was completely unsupervised in her day-to-day activities. She was autonomous. She would arrive at the post office. That wasn't my question. My question was, did she have another boss who was giving her the payment for this job? No. She was not a subcontractor. If I get your question correctly, she was only a contractor to the United States. That's correct. Your position is she was her own boss. That's correct. She – in the contract documents, Your Honor, that she signed when she got this position, she indicated that she was a privately owned, independently owned business and that if she was going to retain anybody to work in the capacity of fulfilling this contract, she would have to pay them according to Federal minimum wage standards and so on and so forth. She could subcontract her position. If she couldn't make it, like because she had to go to a funeral, for example, her son would show up to do the job for her or her husband would show up to do the job for her. That is categorically anathema to, you know, the standard position of employee. And there are plenty of other facts in the record that indicate that this is the case. What's interesting is that dismissal would be appropriate in this case under any fact that established an absence of jurisdiction in this case. Counsel, in the Logue case, Justice Rehnquist said that the test in this type of case is whether there is absence of authority in the principle to control the physical conduct of the contractor. Now, clearly, the postmaster could tell her what to do. The – I think the Logue case has to be read in concert with the Orleans case. And the Orleans case stipulates that if a Federal officer lacks the authority to control a contractor, the ultra vires control of that contractor cannot conform or convert that independent contractor into an employee. So, in essence, you've got to have two things. You've got to have both the authority to control that contractor, and then you've got to have the actual exercise of control over the detailed physical performance of that contractor's day-to-day activities. Now, here, they had on the wall what she had to do and how she had to do it. And the postmaster and other employees would say, well, I think there's some dirt over here. There's something. So it's a case that I find it very difficult to find that there wasn't not only the authority to control, but actual control. Well, I would refer, Your Honor, to my brief and the specific provisions in there, including the declaration from the postmaster, Durand, indicating that he was the contracting – the contract reporting officer. If he saw a problem with Ms. Hill's performance, he would report it to a superior. He had no authority to modify her compensation or to terminate her. More to the point, in regards to what Ms. Hill did there on a day-to-day basis, sure, there was a chart on the wall, but the chart merely said you should clean the Venetian blinds every three weeks, okay? It didn't say, you know, when she had to clean those blinds or, you know, that she had to do it thus and such. And in this regard, I think it's important to point out also that if the contract was specific in the manner in which it directed Ms. Hill to perform her activities, that's an indication that there was no master-servant relationship here. If there was a master-servant relationship, then why wouldn't the post office and the postmaster follow Ms. Hill around and every job that she did just say do it X, Y, Z this way? That's the typical earmark of a master-servant relationship. I'd like to pose a question to you about the law or what your view is of the law in our precedent. Do we have cases that elaborate on where one draws the line between exercising the kind of control that makes someone an employee as contrasted with setting standards that an independent contractor must comply with? You know, I'm not sure that there's a case where there's a bright line determination that's made. The cases that speak to the issue are the cases that I've analyzed in my brief, and I think they give you examples of what is and what is not. You know, there's instances where, for example, a ballerina is considered an employee and not an independent contractor for various reasons. But the earmarks are the things that we're talking about here and the things that have been raised. The first and foremost important issue is the extent to which the contractor was subject to the detailed physical control on a daily basis. Orleans set the distinction between, you know, setting out detailed parameters for what the contractor must do in order to achieve the objectives of the contract versus actually controlling that contractor. I guess maybe the best example is the Page case. And in the Page case they said that you've got to have an extent of control that is so pervasive that effectively there ceases to be an independent contractor. Here that was certainly not the case. Ms. Hill was free to come and go as she saw fit as long as she performed her duties. There was no set time that she had to be at the office or leave the office. That's inconsistent with what a federal employee is supposed to do. She had to be there during the hours that the post office was open. Indeed, that was the case. But that is only the case because the post office is a secure government facility. People's mail is in there, so they've got to lock it up after hours. Sure, but that's the factor. She had to be there. During business hours. Right. As would any other independent contractor that was performing services at that facility. That's obviously just one factor. Exactly, yes. And, again, all of these agency factors are subsidiary to the primary and most important inquiry, which is the extent to which the contractor's day-to-day activities were dictated and controlled by the post office. Again, I've set forth an expansive discussion of all these factors in my briefing. And, again, none of them are disputed on a factual basis. So the entire argument that there was an incorrect standard of review applied in this case is illusory. I believe that the contract specified that she was supposed to, I can't remember what exactly the intervals were, but damp mopping may have been required every day. I'm not certain. Every day. Again, I'm not certain it's possible. So the three main points that I wanted to make today, Your Honor, were,  Second of all, the fact that she was supposed to be there. So essentially the jurisdiction and the merits in this case are not intertwined. Plaintiffs have really gotten the burden of proof and the standard of review back to front here. In a case such as this where you filed a 12B motion attacking the factual basis for plaintiff's assertion for subject matter jurisdiction, the district court is not required to interpret disputed facts in favor of plaintiff at all. The district court is required to determine whether or not it has jurisdiction before it can proceed. And in that connection, it is not required to interpret facts in plaintiff's favor. I see that my time is up. Thank you, Mr. Smith. I appreciate it. Mr. Legham, we'll add, if you need more time, we'll add a few more seconds and give you two minutes. Thank you, Your Honors. I just wanted to make a few points, and then if the Court had any questions, I'll be glad to answer them. As far as whether she had any other jobs at the time, she did not have any other jobs. The transcript of her deposition talks about she had three other jobs previously. Previously she had worked cleaning different banks in the town, and she talked about that. She did clean three of the different banks in town, and I cleaned them at night. But then when she went to work here, her hours were 7.30 a.m. to 4.30 p.m. every day. She worked during the day. She was told, in fact, she even asked if she could work at night and was told she could not because she wouldn't have any access to the cleaning supplies that the government did provide her. As I've indicated initially, our main argument is that there was, we believe, overwhelming evidence that she, in fact, was an employee. The second argument we're making, of course, is the fact we do believe, under the Prescott standard, we do believe the standard is that these issues are intertwined. I know that's something that the Court may have some questions about, but we do believe this is an intertwined issue where the Court does have to consider the facts in the light most favorable to the appellant, at least the district court did, should have, and that if you do that, there's no way that summary judgment or the motion to dismiss could have been granted in favor of the United States. If there's any questions the Court has, otherwise. Judge Fletcher, Judge King. Thank you very much, Your Honor. We appreciate the travels of both counsel and your spirited debate on the law. Thank you, Your Honor. Thank you, Your Honor.
judges: B. Fletcher, Gould, King